MEMORANDUM OPINION AND ORDER
 

 ASPEN, Chief Judge.
 

 The Village of Oak Park has filed a Rule 60(b) motion for reconsideration of our February 18 opinion in this case, in which we held that the Village must allow the plaintiffs — members of a group organizing the annual National Day of Prayer (NDP) celebration in Oak Park — to hold their event in the Oak Park Village Hall, “so long as [they] limit[ ] the agenda to civic matters, such as ‘prayer for our community, and our local, state and national government leaders.’”
 
 Deboer v. Village of Oak Park,
 
 53 F.Supp.2d 982, 991 (N.D.Ill. 1999) (quoting plaintiffs application for use of the Village Hall). Attached as an exhibit to that motion is a transcript of the May 6,1999 NDP event held in the Village Hall, revealing that the service included readings and prayers on a variety of matters, including the welfare of government leaders. A number of speakers delivered remarks to the audience but did not speak directly to one another, nor did the audience address them in return, except to say “amen” or “praise God” every now and then. The leaders also performed songs for the attendees and occasionally led the group in prayer or song.
 

 DeBoer argues that we should strike the motion because the transcript was created from a tape recording made by one of the Village’s attorneys, Simone Boutet, who did not ask the NDP organizers for their consent to record the ceremony. DeBoer argues that the taping violated the Illinois Eavesdropping Act and the Rules of Professional Conduct for attorneys. He therefore believes that we should strike the. motion as “scandalous” pursuant to Federal Rule of Civil Procedure 12(f) or as an exercise of our inherent powers.
 

 Rule 12(f) — which states that we may strike from a
 
 pleading
 
 “any redundant, immaterial, impertinent, or scandalous matter” — is not the proper vehicle for DeBoer’s request, because a motion for reconsideration and its supporting materials are not “pleadings.”
 
 See Hrubec v. National R.R. Passenger Corp.,
 
 829 F.Supp. 1502, 1506 (N.D.Ill.1993) (Aspen, J.) (motion to strike and memorandum in support thereof are not “pleadings”);
 
 see also EEOC v. Admiral Maintenance Svc.,
 
 174 F.R.D. 643, 646 (N.D.Ill.1997) (affidavits or statements of undisputed facts, if “integral parts of the motion,” cannot be stricken under Rule 12(f)). “Pleadings,” under Rule 7(a), include complaints, answers, replies to counterclaims, answers to cross-claims, third party complaints, and
 
 *924
 
 third party answers; motions are different animals and are addressed separately under Rule 7(b).
 

 DeBoer asks us, alternatively, to strike the Village’s motion as an exercise of our inherent powers to “fashion ... appropriate sanctions] for conduct which abuses the judicial process.”
 
 Chambers v. NASCO, Inc.,
 
 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). The Supreme Court and Seventh Circuit have admonished, however, that such powers “must be invoked with the utmost caution.”
 
 Corley v. Rosewood Gore Ctr., Inc.,
 
 142 F.3d 1041, 1059 (7th Cir.1998) (citing
 
 Chambers,
 
 501 U.S. at 44, 50, 111 S.Ct. 2123). In order to sanction a party under our inherent power, we must find that the party “‘acted in bad faith, vexatiously, wantonly, or for oppressive reasons.’ ”
 
 Id.
 
 at 1058 (quoting
 
 Chambers,
 
 501 U.S. at 45-46, 50, 111 S.Ct. 2123). Boutet’s conduct does not fit this description.
 

 First, we do not think that Boutet violated the Illinois Eavesdropping Act, under which it is a crime to use an eavesdropping device to record all or any part of a “conversation” without the consent of all of the participants, 720 ILCS 5/14-2, because we do not think that the NDP event was a “conversation.” The statute defines “conversation” as: “any oral communication between 2 or more persons regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation.” 720 ILCS 5/14— 1(d). While this definition may sound broad, one of the statutory exceptions elaborates on the reach of the eaves-' dropping law, exempting from its application the recording of “[a]ny broadcast by radio, television or otherwise ... of any function where the public is in attendance
 
 and the conversations are overheard incidental to the main purpose for which such broadcasts are then being made.”
 
 720 ILCS 5/14 — 3(c) (emphasis added). So the “conversations” to which the eavesdropping prohibition is directed are those
 
 between individuals
 
 in attendance at public events, not the remarks made by the speakers at such events to those in the audience. We were to adopt DeBoer’s interpretation of “conversation,” anyone who tape records the players’ speeches at a Chicago Bulls’ championship celebration in Grant Park .could be held civilly or criminally liable under the Illinois Eavesdropping Act for taping the event without the consent of each and every person in attendance. It was not the Illinois General Assembly’s intention to criminalize such conduct.
 

 Furthermore, every reported decision which considers the meaning of the term “conversation” involves a telephone call, a discussion at a meeting, or some other oral exchange between a small group of people. We are aware of no decision applying the eavesdropping statute to a public speech, lecture, rally, ceremony, or any event similar to that held by the plaintiffs in the Village Hall. As the Illinois Appellate Court observed in a different context, “[i]t was not the legislature’s intent to provide a definition of ‘conversation’ so broad as to encompass any audible expression whatsoever.”
 
 In re Marriage of Almquist,
 
 299 Ill.App.3d 732, 234 Ill.Dec. 910, 704 N.E.2d 68, 71 (1998) (playing a recording of someone’s voice as a means of interfering with a telephone call did not constitute participation in that conversation).
 

 All of this comports with our colloquial understanding of “conversation” as involving an
 
 exchange
 
 —that is, mutual discourse as opposed to a statement or declaration by one person alone. The dictionary defines “conversation” as: “A spoken exchange of opinions, thoughts, and feelings: TALK.” Webster’s II New Riverside University Dictionary (1984). The transcript of the NDP ceremony confirms that such an exchange did not take place. At no time did the audience engage in any oral
 
 exchange
 
 or
 
 discourse
 
 with the speakers, much less with the plaintiffs themselves.
 

 
 *925
 
 We conclude that the Illinois Eavesdropping Act does not apply to the NDP event, so Boutet’s taping did not violate Illinois law. Nor do
 
 we
 
 think that Boutet acted “in bad faith, vexatiously, wantonly, or for oppressive reasons,” in light of the special circumstances of this case. Boutet was acting on behalf of the Village, taping a public event held in the Village’s own Hall, to ensure compliance not only with the Village’s own Use Policy, but also with this Court’s order, which was emphatically clear:
 

 We take the plaintiffs’ word that they intended to engage only in prayer for their community and government leaders. There is some evidence in the record suggesting that National Day of Prayer services conducted in past years have included other types of prayer as well,
 
 see, e.g.,
 
 DeBoer Dep, Ex. 1, so the precise scope of the proposed NDP event is not entirely clear.... If in fact the NDP agenda is more expansive than the plaintiffs’ applications suggest, however, we think that it would be constitutional for the Village to prevent the group from meeting in the forum, since the proposed activity could no longer pass as “civic.” By way of analogy, many Day of Atonement (Yom Kippur) services held by American Jewish congregations include a prayer for the United States and its national, state, and local leaders. This prayer, however, lasting only a few minutes, does not transform the entire service into a civic affair.
 

 We later emphasized that:
 

 this case should be construed narrowly. A variance to the particular factual situation before us could very well implicate First Amendment considerations warranting a different result ... The National Day of Prayer group — provided that it meets the other elements of the Use Policy not examined in this opinion — should therefore be allowed to hold its annual meeting in the Village Hall, so
 
 long as it limits the agenda to civic matters,
 
 such as “prayer for our community, and our local, state and national government leaders.”
 

 (emphasis added). We decline to exercise our inherent powers to punish the Village’s recording of the events held in its Village Hall to ensure compliance with our order. The recording and transcript are, after all, the best evidence of what happened at the NDP meeting.
 

 DeBoer also argues that we should strike the Village’s motion because Boutet’s taping violated the Illinois Rules of Professional Responsibility for attorneys as “conduct involving dishonesty, fraud, deceit, or misrepresentation.” We do not agree. We do not think that the conduct at issue — the Village’s taping of an event held in its own Village Hall to verify what took place during a program whose scope was limited by an injunction of this Court — was fraudulent or deceitful, nor do we think that it abused the judicial process or offended the notions of honesty and fair play that the ethical guidelines were designed to protect. Boutet’s conduct — as part of the Village’s effort to monitor compliance with a federal court order — did not disrupt the administration of justice, but enhanced it. The cases DeBoer cites in support of his argument are inapposite, as they again address a lawyer’s taping of “conversations”' — between lawyers and judges, counsel and opposing counsel, lawyer and client, investigator and witness—
 
 not
 
 the taping of public speeches, lectures, or prayer services.
 

 We do not think that Boutet committed an ethical violation, so we will not exclude the most reliable evidence of what took place at the National Day of Prayer event in the Oak Park Village Hall. We therefore deny DeBoer’s motion to strike the Village’s motion for reconsideration. We have already received DeBoer’s response brief, so the Village should file its reply by September 2, 1999, and the status date is reset to October 8, 1999. It is so ordered.