No. 2--01--0491

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Du Page County.

)

Plaintiff-Appellant, )

) No. 00-CF--2473

v. )

)

DANIEL G. ROAKE, ) Honorable

) Ann Brackley Jorgensen,

Defendant-Appellee. ) Judge, Presiding.

________________________________________________________________

JUSTICE O'MALLEY delivered the opinion of the court:

The State charged defendant, Daniel G. Roake, with two counts of unlawful delivery of a controlled substance (720 ILCS 570/401(d) (West 2000)).  Defendant filed a motion to suppress the contents of certain tape recordings.  The trial court denied the motion in part and granted it in part.  As to the part it granted, the court determined that the oral application procedure that the police used in seeking approval for the use of an eavesdropping device failed to satisfy any of the procedures mandated by article 108A of the Code of Criminal Procedure of 1963 (725 ILCS 5/108A--1 
et
 
seq
. (West 2000)), the statute governing judicial supervision of the use of eavesdropping devices where there is a consenting party (the eavesdropping statute).  The State appeals and contends that the application procedure that the police used was appropriate under the statute's emergency procedures.  For the reasons that follow, we agree and reverse the suppression order.

At a hearing on the motion to suppress, defendant called Robert Maloney as a witness.  Maloney, a Naperville police detective assigned to drug investigations, testified that he was involved in the investigation of a subject named John Groll.  Groll was suspected of delivering a controlled substance known as ecstasy.  Pursuant to his investigation of Groll, Maloney generated three overhear applications and obtained three overhear orders pursuant to the eavesdropping statute.  The orders authorized overhears of conversations between Maloney, Groll, and unknown others.  The orders authorized the overhears for periods from May 30, 2000, through June 9, 2000; from June 9, 2000, through June 19, 2000; and from June 19, 2000, through June 29, 2000.  

During the course of his investigation of Groll, Maloney made several undercover purchases of ecstasy from Groll.  One of these purchases occurred on June 8, 2000.  The June 8 purchase was overheard and recorded.  While the June 8 transaction was occurring, defendant drove his car alongside Maloney and Groll and said something that was overheard and tape-recorded.  Maloney acknowledged that Groll had told him before the purchase that associates of Groll would be nearby during the purchase.  Maloney denied that he had ever heard defendant's name prior to the conversation overheard on June 8.

Maloney further testified that on June 22, 2000, pursuant to a warrant, the police arrested Groll for the unlawful delivery of 91 ecstasy pills.  The arrest occurred at 6:23 p.m.  Groll was taken to the Naperville police department, where other officers interviewed him.  Around 7:30 p.m., the officers told Maloney that Groll was willing to cooperate and wear a wire to record conversations that would occur between Groll and his sources.  Groll told the police that he was expecting calls on his cell phone from defendant and an individual named Dan Tierney; that defendant and Tierney had supplied him with the 91 ecstasy pills; and that they would be calling him to make arrangements to get the money he owed them for the pills.

Maloney further testified that after the police learned that Groll would cooperate with them and wear a wire they "tried getting an emergency or amended order of overhear."  This was done when another police officer, Sergeant Guerreri, contacted Joe Ruggiero, an assistant State's Attorney, Joseph E. Birkett, the State's Attorney, and Judge Richard A. Lucas, a circuit court judge.  Maloney was later informed that in a conference call between these individuals Judge Lucas "approved the emergency amended portion of the overhear [order]."  Maloney testified that he had begun preparing a written application for an overhear order "but due to time constraints when Mr. Roake wanted his money and the time when Groll was supposed to drop it off, we did not have enough time to get that done."  The State stipulated that on June 22, 2000, the police did not submit a written application for authority to overhear conversations involving defendant.

Maloney further testified that there were two overhears of defendant on June 22, 2000.  There was a telephone overhear at 9:04 p.m. and an in-person overhear at 10:33 p.m.   In the telephone overhear, Groll spoke with defendant on the telephone while a police officer placed his ear close to the telephone and listened to the conversation.  The in-person overhear involved conversations between Groll and defendant that occurred after the telephone overhear when Groll met with defendant and gave defendant the money for the 91 ecstasy pills and when defendant returned after obtaining additional pills and delivered the pills to Groll.  Defendant was then arrested.

The next day, June 23, 2000, pursuant to a written application, Maloney obtained a written overhear order from Judge Lucas.  The written application was admitted into evidence as part of defendant's exhibit "D."  The application is entitled "APPLICATION FOR ORDER AMENDING AUTHORIZED USE OF EAVESDROPPING DEVICE."  In the application, Maloney referred to attached copies of at least two of the previous overhear orders that he had obtained with respect to his investigation of Groll; outlined his prior dealings with Groll that culminated in Groll's arrest; described his prior involvement with defendant; described Groll's agreement to cooperate with the police with respect to defendant who was described as one of Groll's sources; and noted the efforts of the police on June 22, 2000, to obtain an overhear order with respect to defendant.  The application sought the amendment of an unspecified overhear order to show Groll as a consenting party and to show defendant as an additional person to be overheard

The order that Judge Lucas signed on June 23, 2000, stated that the Naperville police contacted him on June 22 at about 8:45 p.m., that the police informed him of the facts and circumstances of the investigation as set out in the application, and that he approved an amendment to an unspecified previous order to allow Groll as an additional consenting party and defendant as an additional person to be overheard.  The order also stated that, upon examination of the application, Judge Lucas found that Groll and Mahoney consented to the use of an eavesdropping device and willingly participated in the overheard conversations; that there was reasonable cause to believe that the other parties participating in the conversations were committing, had committed, or were about to commit a felony offense; and that there was reasonable cause to believe that particular conversations concerning the felony offense or offenses would be obtained through the use of an eavesdropping device.

During arguments following the suppression hearing, the trial court asked the State if it was arguing that the procedure the police followed fell under the emergency section of the eavesdropping statute.  The State responded that it was not arguing under the emergency section of the statute and added:

"If we had said this was an emergency and we went -- and it would have been a lot easier to say this was an emergency, you could bet everything you have that [defendant's attorney] would be arguing today that this wasn't an emergency situation because we could have got judicial approval.  Every time you get an emergency eavesdrop, that's the defense's argument.  So what we try to do is to get a judicial approval so that we don't have to hear that argument.  So we did get judicial approval.  Now we're here arguing this wasn't an emergency and that we're conceding the fact because -- and they are using the fact that we actually went to a judge first as a reason to try to suppress this evidence, which is absolutely backwards.  Here we are trying to get a judge involved beforehand, and it's being used against us."

After taking the matter under advisement, the trial court denied defendant's motion to suppress with respect to the conversation of defendant that was overheard on June 8, 2000.  That part of the trial court's ruling is not before us in this appeal.  As was later clarified, the trial court granted the motion to suppress with respect to the conversations of defendant that were overheard both over the telephone and in person on June 22, 2000.

The State filed a timely motion to reconsider arguing that the procedure the police used should be deemed appropriate under the emergency provisions of the eavesdropping statute.  The trial court denied the motion to reconsider.  The State's timely notice of appeal and certificate of impairment followed.  

On appeal, the State contends that the trial court erred in suppressing the June 22 overhears.  The State argues, as it did below, that the procedure the police used should be deemed appropriate under the emergency provisions of the eavesdropping statute.  Defendant responds that, for various reasons including his interpretation of the eavesdropping statute's emergency provisions, the situation that occurred on June 22 was not an emergency.  Defendant also argues that, even if the situation could be deemed an emergency, the trial court's ruling was correct because the police failed to comply with the requirements of the emergency provisions of the statute.

We initially address defendant's argument that the situation was not an emergency because the police were in possession of information as early as June 14, 2000, that an overhear order specifically targeting defendant was necessary.  Defendant bases this argument on the information in the written application that Maloney submitted to Judge Lucas on June 23.  After reviewing this information, we conclude that the information available to the police prior to June 22 was not sufficient for the police to have obtained judicial approval for an overhear involving defendant.  Accordingly, defendant's argument is unavailing.

We next address the parties' dispute as to whether the June 22 situation was an emergency under the eavesdropping statute.  This dispute involves a question of statutory construction.

The primary rule in statutory construction is to ascertain and give effect to the legislature's intent.  To determine the legislature's intent, courts should first look to the language of the statute and accord the language its plain and commonly understood meaning.  A court must not read into the plain language exceptions, limitations, or conditions that the legislature did not intend.  
People v. Ellis
, 199 Ill. 2d 28, 39 (2002).  Statutory construction is a question of law.  
People v. Jurisec
, 199 Ill. 2d 108, 118 (2002).  Consequently, we employ a 
de
 
novo
 standard of review with respect to an issue of statutory construction.  
People ex rel. Devine v. $30,700.00 United States Currency
, 199 Ill. 2d 142, 148-49 (2002).

The eavesdropping statute that is in question here applies to situations, such as the situation in this case, where one of the parties to a conversation consents to the monitoring of the conversation.  725 ILCS 5/108A--1 (West 2000).  The eavesdropping statute provides that every application for an order authorizing or subsequently approving the use of an eavesdropping device must be in writing.  725 ILCS 5/108A--3 (West 2000).

With respect to emergency situations, section 108A--6 of the eavesdropping statute provides:

"Emergency Exception to Procedures.  (a) Notwithstanding any other provisions of this Article, any investigative or law enforcement officer, upon approval of a State's Attorney, or without it if a reasonable effort has been made to contact the appropriate State's Attorney, may use an eavesdropping device in an emergency situation as defined in this Section.  Such use must be in accordance with the provisions of this Section and may be allowed only where the officer reasonably believes that an order permitting the use of the device would issue were there a prior hearing.

An emergency situation exists when, without previous notice to the law enforcement officer sufficient to obtain prior judicial approval, the conversation to be overheard or recorded will occur within a short period of time, the use of the device is necessary for the protection of the law enforcement officer or it will occur in a situation involving a clear and present danger of imminent death or great bodily harm to persons resulting from:  (1) a kidnapping or the holding of a hostage by force or the threat of the imminent use of force; or (2) the occupation by force or the threat of the imminent use of force of any premises, place, vehicle, vessel or aircraft.

(b) In all such cases, an application for an order approving the previous or continuing use of an eavesdropping device must be made within 48 hours of the commencement of such use.  In the absence of such an order, or upon its denial, any continuing use shall immediately terminate.

In order to approve such emergency use, the judge must make a determination (1) that he would have granted an order had the information been before the court prior to the use of the device and (2) that there was an emergency situation as defined in this Section."  725 ILCS 5/108A--6 (West 2000).

In this case, the parties disagree as to the proper construction of the definition of an emergency situation in section 108A--6.  The State argues that the phrases in the definition that involve (1) time constraints, (2) officer protection, and (3) danger of death or great bodily harm should be read disjunctively. Thus, under the State's construction, a situation that satisfies any one of the phrases should be regarded as an emergency situation.  Defendant takes the position that, in light of the commonly understood meaning of the term "emergency," the phrases should be interpreted to define an emergency situation as one that involves the time constraints of the first phrase and also involves either of the other phrases.

The plain language of the statute supports the State's argument.  A series of words or phrases with the last member of the series separated by the word "or" implies that all the members of the series should be read in the disjunctive.  2A N. Singer, Sutherland on Statutory Construction §47:38, at 402 (6th ed. 2000).  That is the case with the series of phrases in question here.

Interestingly, another example of the use of this principle occurs within the very text in question.  The last part of the last phrase in question, which states "the threat of the imminent use of force of any premises, place, vehicle, vessel or aircraft," lists a series of words with the last member of the series separated by the word "or."  It is readily apparent that the members of this list should be construed disjunctively.

Further support for construing the phrases in question disjunctively is found in a former version of section 108A--6.  Effective September 1, 1989, the legislature amended the definition of "emergency situation" in section 108A--6 by adding the final phrase in the series of phrases that is in question here, 
i.e.
, the series of phrases in the current statute.  Before the amendment, the definition contained only the first and second phrases and these phrases were separated by the word "or" and were clearly intended to be read disjunctively.  Public Act 86--763, eff. September 1, 1989 (amending Ill. Rev. Stat. 1987, ch. 38, par. 108A--6).  Defendant does not contend that these phrases should not have been read disjunctively prior to the amendment and offers no explanation as to why the amendment would have changed such a disjunctive reading.

For these reasons, we conclude that the legislature intended the three phrases in question within the definition of "emergency situation" in section 108A--6 to be construed disjunctively.  We therefore agree with the State's argument that circumstances that satisfy any one of the phrases are sufficient to constitute an emergency situation within the meaning of section 108A--6.   The phrase at issue in this case is the time constraint phrase in section 108A--6.  This phrase defines an emergency situation as one where "the conversation to be overheard or recorded will occur within a short period of time."  725 ILCS 5/108A--6 (West 2000).  The parties disagree as to whether the June 22 situation satisfied the time constraint phrase.  In the State’s view, the time from when Maloney learned that Groll was willing to cooperate and that Groll was expecting calls from defendant and Tierney, 
i.e.
, about 7:30 p.m. on June 22, until the time of the overhears in question, 
i.e.
, about 9:04 p.m. and about 10:30 p.m. on June 22, was too short for the police to obtain written approval for the overhears.  In defendant's view, the time was sufficient for the police to obtain written approval for the overhears.

Two of this court's prior opinions are instructive on this issue.  In one of the cases, this court determined that a 50-minute period between the time that the police learned a supposed murder for hire was to occur and the time the hit man was to meet the person who solicited him was "the type of 'short period of time' provided for in [section 108A--6]." 
People v. Schnurr
, 206 Ill. App. 3d 522, 532 (1990)
.  In another case involving a hired murderer who went to the police, this court determined that the 2½-hour period between the time that the police learned that the hit was going to occur that day and the time the hit man joined the solicitor was sufficient to satisfy the time constraint phrase of section 108A--6.  
People v. Seehausen
, 245 Ill. App. 3d 506, 512 (1993).

In this case, at 7:30 p.m. on June 22, the police learned that Groll was willing to cooperate with them.  The police then began to prepare a written application for judicial approval of an overhear involving Groll and defendant.  However, the call between Groll and defendant that the police overheard occurred at 9:04 p.m. on June 22.  This call then set in motion the in-person overhear that occurred between Groll and defendant at about 10:30 p.m. on June 22.  We recognize that defendant also argues that there was no emergency because nothing in the record shows why the meeting between Groll and defendant had to be set up immediately.  However, we believe the police could have reasonably inferred that unless they acted immediately they might lose either Groll's willingness to cooperate or the opportunity to arrange a meeting between Groll and defendant, Groll's purported supplier.  Under these circumstances, and with 
Schnurr
 and 
Seehausen
 in mind, we conclude that the time period that occurred between the police learning that Groll was willing to cooperate and the times of the June 22 overhears was sufficiently short to satisfy section 108A--6.  Thus, the circumstances that gave rise to the June 22 overhears constituted an emergency situation that justified the emergency use of the overhear devices.

Defendant next contends that, even assuming, 
arguendo
, that the circumstances did constitute an emergency situation under section 108A--6, the trial court did not err in suppressing the June 22 tapes because the State failed to follow the procedures mandated by section 108A--6.  The primary procedural defects that the trial court relied on in making its ruling were the failure of the police in the written application that they submitted to Judge Lucas on June 23 to indicate that they sought approval for the use of an overhear device on the basis of an emergency and the failure of the judge to state in the order that he had determined that there was an emergency situation.

The record clearly shows that these procedural defects occurred.  The application was defective because it indicated that it sought to amend some unspecified prior overhear order.  But, as the trial court correctly noted, the only provisions in the eavesdropping statute that could reasonably be deemed to apply to an oral application for approval of an overhear order are the provisions in section 108A--6 that govern emergency situations.  By failing to identify their application as one involving an emergency, the police failed to comply with the statute.  The order itself was likewise defective because it did not state that the judge had determined that there was an emergency situation.  See 725 ILCS 5/108A--6(b) (West 2000).

Thus the question before us is whether these technical defects were sufficient to warrant the suppression of the recordings.  Because Illinois citizens are entitled to be safeguarded from unnecessary governmental surveillance and other unreasonable intrusions into their privacy, the statutory restraints on eavesdropping must be strictly construed with respect to all requests and consents to the use of an eavesdropping device.  
People v. Bockman
, 328 Ill. App. 3d 384, 388 (2002).  However, although the eavesdropping statute is to be strictly construed, not all statutory violations require suppression.  
People v. Ellis
, 122 Ill. App. 3d 900, 904 (1984).

Suppression is required only where there is a failure to satisfy any of the statutory requirements that directly and substantially implement the legislative intent to limit the use of eavesdropping devices.  
People v. Nieves
, 92 Ill. 2d 452, 458 (1982).  Where there is a failure to comply with statutory requirements, suppression depends on whether (1) the particular safeguard is central to the legislative scheme of preventing abuses; (2) the purpose the particular procedure was designed to accomplish has been satisfied despite the error; and (3) the statutory requirement was deliberately ignored and, if so, whether the State gained any tactical advantage thereby.  
People v. Rogers
, 141 Ill. App. 3d 374, 379 (1986).

In this case, the police were faced with an emergency situation and sought and received approval from the State's Attorney to use an eavesdropping device.  Under section 108A--6, the police at that point had proper authority to use the device as long as, within 48 hours of their use of the device, they submitted a written application seeking judicial approval.  Here, the police actually sought and received oral approval from a judge for the use of the device before they used it.  The next day, the police then submitted a written application for approval of the use of the device.  Based on this written application, the judge then issued an overhear order.

Although these procedures were technically deficient as noted above, we fail to see how the procedures abrogated any safeguard that is central to the legislative scheme of preventing abuses, or that statutory requirements were deliberately ignored, or, if so, that the State gained any tactical advantage thereby.  Moreover, the purpose the procedures were designed to accomplish, judicial supervision of the use of eavesdropping devices, has been satisfied despite the technical errors.  Therefore, while we certainly do not condone the failure of the police to follow proper procedures, we conclude that the technical errors in the procedures used in this case did not require suppression.

Accordingly, the part of the order of the circuit court of Du Page County that granted defendant's motion to suppress the recordings of the June 22, 2000, conversations is reversed.

Reversed.

BYRNE and GROMETER, JJ., concur.