No. 2--08--0879    Filed: 12-8-09

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| DENISE PLOCK, SHELLY BARTH, DAVID MOURI, and MARY TREGLOAN, | ) ) ) | Appeal from the Circuit Court of Stephenson County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 07--CH--73 |
| THE BOARD OF EDUCATION OF FREEPORT SCHOOL DISTRICT No. 145, | ) ) ) ) | Honorable Michael P. Bald, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the opinion of the court:

On April 2, 2007, the plaintiffs, Denise Plock, Shelly Barth, David Mouri, and Mary Tregloan, filed a complaint seeking to enjoin the defendant, the Board of Education of Freeport School District No. 145, from carrying out a proposed policy of operating audio-recording equipment in certain special-education classrooms. The plaintiffs argued, in part, that the proposed audio recordings would violate section 14--2(a)(1) of the Criminal Code of 1961 (hereinafter the Illinois Eavesdropping Act or Act) (720 ILCS 5/14--2(a)(1) (West 2006)). The plaintiffs filed a motion for summary judgment on their complaint and the defendant filed a cross-motion for declaratory judgment. On August 20, 2008, the trial court entered an order granting the plaintiffs' motion and declaring that the proposed policy violated the Act as a matter of law. The defendant appeals from that order. We affirm.

In or about October 2005, teacher aides, employed by the defendant, reported that a teacher and a classroom aide had engaged in abuse of disabled elementary students in one of the defendant's special-education classrooms. The alleged abuse included both physical and verbal abuse such as screaming at students, blowing whistles directly into students' eardrums, verbally degrading students, force-feeding students, pushing students, slapping students, and abandoning students in the time-out room or bathroom. The defendant conducted an investigation in response to these allegations. Due to the emotional and physical disabilities of the students, the defendant was unable to obtain competent statements from the alleged victims of abuse. Nonetheless, based on eyewitness testimony from the classroom aides, the defendant determined it had sufficient evidence that the teacher and classroom aide involved had violated its policies and procedures. As a result, the teacher and classroom aide resigned from the school district in May 2006.

Despite those resignations, the parents of the defendant's special-education students raised concerns about the safety of their children while attending school. In order to help prevent any further abuse, the parents requested that the defendant install audio- and video-recording equipment in special-education classrooms. As a result, the defendant proposed the installation of security cameras, with audio- and video-recording capabilities, in open and obvious locations limited to "EXCEL" and "Life Skills" special-education classrooms. The defendant's proposed policy included the following conditions: (1) each classroom containing a camera would include a notice regarding the presence and purpose of the camera; (2) the recordings would not be broadcast to a real-time viewing station but would be stored on discs maintained in electronic format; (3) the discs would remain confidential and would not be viewed or broadcast in any form unless and until a complaint

of misconduct was initiated; and (4) the discs would be maintained in secured sites, to which only authorized administrators would have access.

The defendant notified the teachers and the aides, both represented by different bargaining units, of its intent to install the audio- and video-recording equipment in the special-education classrooms. The teachers' aides were represented by the United Steelworkers of America, Local Unit No. 745 (USWA), and the teachers were represented by the Freeport Education Association (FEA). The defendant and the USWA reached an agreement to use the audio- and video-recording equipment subject to certain conditions concerning the locations of the devices to be installed and the use of the recordings. However, the defendant was unable to reach an agreement with the FEA. At the end of March 2007, the defendant informed the FEA that, regardless of the lack of an agreement, it intended to commence its proposed recording policy on April 2, 2007.

On April 2, 2007, the plaintiffs filed a two-count complaint in the circuit court of Stephenson County, seeking to enjoin the defendant from carrying out its proposed policy of operating audio-recording equipment in its "EXCEL" and "Life Skills" classrooms. The plaintiffs are special-education teachers, employed by the defendant, who are currently assigned to those special-education classrooms. The plaintiffs did not challenge the proposed video recording of the subject classrooms. In count I, the plaintiffs claimed that the audio recording of the classrooms would violate their fourth amendment right to be free from unreasonable searches and seizures. Count II alleged that the proposed audio recording would violate the Act (720 ILCS 5/14--2(a)(1) (West 2006)). In addition to the complaint, the plaintiffs filed a motion for a temporary restraining order or preliminary injunction to prevent the defendant from commencing any audio recording in the subject classrooms pending a final determination on the complaint.

In response to the plaintiff's motion for preliminary injunction, the defendant voluntarily agreed to refrain from audio taping the classrooms until the completion of this litigation. In response to the plaintiffs' complaint, and based on the fourth amendment claim, the defendant removed the case to the United States District Court for the Northern District of Illinois (see 28 U.S.C. §1441 (2006); 28 U.S.C. §1331 (2006)) and filed a motion for judgment on the pleadings. On December 18, 2007, the federal court entered judgment on the pleadings in favor of the defendant on the plaintiffs' fourth amendment claim. Plock v. Board of Education of Freeport School District No. 145, 545 F. Supp. 2d 755, 758 (N.D. Ill. 2007). In so ruling, the court stated:

"A classroom in a public school is not the private property of any teacher. A classroom is a public space in which government employees communicate with members of the public. There is nothing private about communications which take place in such a setting. Any expectations of privacy concerning communications taking place in special education classrooms such as those subject to the proposed audio monitoring in this case are inherently unreasonable and beyond the protection of the Fourth Amendment." Plock, 545 F. Supp. 2d at 758.

Having dismissed the federal claim, the court remanded the plaintiffs' eavesdropping claim back to the circuit court of Stephenson County. Plock, 545 F. Supp. 2d at 758.

On May 2, 2008, upon remand to the circuit court, the defendant filed a motion for leave to file a counterclaim for declaratory judgment "in order to obtain a swift declaration *** concerning the interpretation and application of the Illinois Eavesdropping Act as a matter of law." (Emphasis in original.) On May 9, 2008, the plaintiffs filed a response to the defendant's motion, objecting to the defendant filing such a counterclaim a year after it had filed its answer to the plaintiffs' complaint.

Nonetheless, the plaintiffs agreed with the defendant's request to seek a declaration from the trial court as to whether the proposed audio-taping policy violated the Act. Consequently, on that same date, the plaintiffs also filed a motion for summary judgment pursuant to section 2--1005(a) of the Code of Civil Procedure (the Code) (735 ILCS 5/2--1005(a) (West 2006)), arguing that the undisputed material facts established as a matter of law that the defendant's proposed audio-taping policy violated the Act. The plaintiffs' prayer for relief requested an injunction prohibiting the defendant from making audio recordings in the subject classrooms.

On May 30, 2008, the parties presented argument regarding their pending motions. During that hearing both parties agreed that they were seeking an adjudication of the legal issue of whether the Act applied in the subject classrooms. The plaintiffs orally withdrew their motion for summary judgment and indicated that they would file a new motion for summary judgment requesting a declaratory judgment. The plaintiffs also indicated that they would remove their request for injunctive relief. Thereafter, the trial court denied without prejudice the defendant's motion to file a counterclaim for declaratory judgment and indicated that the case would proceed based on the plaintiffs' motion where the defendant would have an opportunity to file a cross-motion for declaratory judgment.

On June 9, 2008, the plaintiffs filed their motion for summary judgment, striking their request for injunctive relief and seeking a declaration that the defendant's audio-taping policy, if implemented, would violate the Act as a matter of law. On June 19, 2008, the defendant filed a response and a cross-motion for declaratory judgment on the pleadings, affirming that it was seeking a declaration that the Act could not be invoked to prohibit the use of audio-taping equipment in public classrooms. On August 20, 2008, following a hearing, the trial court issued a memorandum opinion and order.

The trial court determined that audio taping in the classrooms at issue would violate the Act. Accordingly, the trial court granted the plaintiffs' motion for summary judgment and denied the defendant's motion for declaratory judgment.

On appeal, the defendant argues that the trial court erred in granting the plaintiffs' motion for summary judgment. Additionally, the defendant argues that the trial court abused its discretion in denying the defendant leave to file its counterclaim for declaratory judgment, engage in discovery, and appear at an evidentiary hearing. A motion for summary judgment is properly granted when the pleadings, depositions, admissions, and affidavits on file establish that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 2006); Chatham Foot Specialists, P.C. v. Health Care Service Corp., 216 Ill. 2d 366, 376 (2005). When ruling on a motion for summary judgment, the court has a duty to construe the evidence in the light most favorable to the nonmoving party and strictly against the movant. Chatham Foot, 216 Ill. 2d at 376. Our review of summary judgment rulings is de novo. Chatham Foot, 216 Ill. 2d at 376.

Section 14--2 of the Act indicates that a person commits eavesdropping when he, in relevant part:

"(1) Knowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication unless he does so (A) with the consent of all of the parties to such conversation or electronic communication ***[.]" 720 ILCS 5/14--2(a)(1) (West 2006).

The Act further defines "conversation" as "any oral communication between 2 or more persons regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation." 720 ILCS 5/14--1(d) (West 2006).

The primary rule of statutory construction is to ascertain and give effect to the legislature's intent. People v. Roake, 334 Ill. App. 3d 504, 510 (2002). The best evidence of the legislature's intent is the language of the statute itself, which must be given its plain and commonly understood meaning. Roake, 334 Ill. App. 3d at 510. "A court must not read into the plain language exceptions, limitations, or conditions that the legislature did not intend." Roake, 334 Ill. App. 3d at 510. When statutory language is clear and unambiguous, a court must apply the statute without resort to further aids of statutory construction. People v. Collins, 214 Ill. 2d 206, 214 (2005). Statutory construction is a question of law that we review de novo. Roake, 334 Ill. App. 3d at 510.

In the present case, the defendant does not dispute that most of the elements that comprise unlawful eavesdropping are met by its proposed policy to audio tape in the special-education classrooms at issue. Specifically, the defendant does not dispute that it plans to knowingly or intentionally use an eavesdropping device. The defendant argues, however, that the Act does not prohibit the proposed audio recording because (1) teaching does not constitute "conversation" within the Act; and (2) the plaintiffs lack an expectation of privacy in their classrooms. The defendant also argues that public policy supports its position.

Despite the defendant's contentions, the plain language of the statute supports a determination that the Act applies to the defendant's proposed policy to audio tape in the special-education classrooms. As previously stated by this court: "Because Illinois citizens are entitled to be safeguarded from unnecessary governmental surveillance and other unreasonable intrusions into their

privacy, the statutory restraints on eavesdropping must be strictly construed with respect to all requests and consents to the use of an eavesdropping device." Roake, 334 Ill. App. 3d at 513. The statute broadly defines "conversation" to include "any oral communication" regardless of whether the conversation was intended to be private. See 720 ILCS 5/14--1(d) (West 2006). School-based teaching generally cannot occur in the absence of some oral communication between teachers and students during the class period. A verified statement by one of the plaintiffs, David Mouri, attached to the plaintiffs' motion for summary judgment, indicated that "during the course of a school day, I regularly converse with students, teacher's aides, and other teachers, during both classroom and non-classroom periods."

In arguing that what occurs in a classroom does not constitute "conversation" within the Act, the defendant relies on DeBoer v. Village of Oak Park, 90 F. Supp. 2d 922 (N.D. Ill. 1999). The issue in DeBoer was whether a public speech constituted a "conversation" within the meaning of the Act. In that case, observers recorded a speech that a speaker had given at a breakfast at the local village hall. The DeBoer court held that the " 'conversations' to which the eavesdropping prohibition [was] directed [were] those between individuals in attendance at public events, not the remarks made by the speakers at such events to those in the audience." (Emphasis in original.) DeBoer, 90 F. Supp. 2d at 924. The DeBoer court further noted that "every reported decision which considers the meaning of the term 'conversation' involves a telephone call, a discussion at a meeting, or some other oral exchange between a small group of people. We are aware of no decision applying the eavesdropping statute to a public speech, lecture, rally, ceremony, or any event similar to that held by the plaintiffs in the Village Hall." DeBoer, 90 F. Supp. 2d at 924.

The defendant's reliance on DeBoer is misplaced. The defendant tries to draw an analogy between a public speech, as in DeBoer, and the conversations that occur in the special-education classrooms at issue. Specifically, the defendant argues that the teachers must adhere to specific lesson plans and are not employed to engage in an open-ended verbal give and take with their students. The speech-like communication that the defendant describes might occur at a university where a professor delivers a lecture to a large audience of students. At lower levels of education, however, such as the special-education classrooms at issue, teachers are providing the students instruction and guidance on acquiring independent living skills. This necessarily requires ongoing oral exchanges between teachers and students. As properly stated by the trial court, the conduct of "teachers imparting knowledge to students and the students asking and answering *** questions is easily distinguishable from public speeches and prayer sessions [as in DeBoer]."

Our determination is further supported by the statutory maxim expressio unius est exclusio alterius (to express one thing implies the exclusion of the other). In re D.W., 214 Ill. 2d 289, 308 (2005). Under this principle, "the enumeration of exceptions in a statute is construed as an exclusion of all other exceptions." People ex rel. Sherman v. Cryns, 203 Ill. 2d 264, 286 (2003). Section 14--3 of the Act lists specific activities that are exempt from the provisions of the Act. See 720 ILCS 5/14--3 (West 2006). Conversation in classroom settings is not one of the listed exemptions. However, it is clear that the legislature has the ability to exempt conversations in specific settings, including school-related settings. During the pendency of this suit, the legislature added an exemption for recordings "of the interior of a school bus while the school bus is being used in the transportation of students to and from school and school-sponsored activities." 720 ILCS 5/14--3(m) (West 2008) (added by Pub. Act 95--352, §5, eff. August 23, 2007). The defendant argues that a similar

exemption for classroom instruction is not necessary because, while student discussions on a school bus are clearly the type of conversations covered by the Act, classroom instruction does not fall within the meaning of "conversation" under the Act, thus requiring no express exemption. Nonetheless, as we determined above, the type of classroom instruction involved here clearly involves the type of conversation covered under the Act, and an express exemption is therefore required.

Essentially the defendant is arguing that the Act applies only to private conversations, such as those that occur on school buses, but does not apply to communications that take place in "public arenas" such as classrooms. Specifically, in its brief, the defendant states that "[a]bsent any objective expectation of privacy in conversations occurring in a public classroom, that society is willing to recognize as reasonable, [the] [p]laintiffs cannot avail themselves of the eavesdropping statute to prohibit the [defendant's] audio recording." The defendant relies on the federal district court's determination that teachers do not have a "reasonable expectation of privacy" concerning communications in their classrooms. Plock, 545 F. Supp. 2d at 758. Nonetheless, there is no indication in the Act that it applies only to conversations when there is an objective expectation of privacy. To the contrary, the plain language of the statute provides that the Act applies to any conversation between two or more individuals regardless of whether any party has an objective or subjective expectation of privacy. See 720 ILCS 5/14--1(d) (West 2006); see also People v. Nestrock, 316 Ill. App. 3d 1, 7 (2000) (holding that the Act applies to all conversations, regardless of whether they were intended to be private); In re Marriage of Almquist, 299 Ill. App. 3d 732, 736-37 (1998) (holding that the Act "prohibits the recording of any conversation without the consent of all parties regardless of any party's expectation of privacy"). Moreover, regardless of whether the special-education classrooms at issue could be considered a "public arena" as the defendant contends,

the legislature has made clear that the Act applies to communications that occur in public settings. Specifically, the legislature has included an exemption to the Act for the recording of meetings open to the public pursuant to the Open Meetings Act (5 ILCS 120/1 et seq. (West 2006)), where members of a public body meet to discuss public business (see 5 ILCS 120/1.02 (West 2006)). See 720 ILCS 5/14--3(e) (West 2006) (exempting from the Act the recording of meetings required to be open by the Open Meetings Act). This court cannot read into the statute any other exceptions, limitations, or conditions that the legislature did not express. See Roake, 334 Ill. App. 3d at 510.

Finally, we note that the defendant argues that public policy supports a determination that the Act does not apply to its proposed audio recording. The defendant argues that few policies in Illinois are more important than the delivery of an appropriate public education. The defendant maintains that its proposed policy will be serving the public interest by protecting both students and teachers. Nonetheless, a court cannot rewrite statutes "to make them consistent with the court's idea of orderliness and public policy." Kozak v. Retirement Board of Firemen's Annuity & Benefit Fund of Chicago, 95 Ill. 2d 211, 220 (1983). Rather, statutes must be interpreted and applied as they are written. Kozak, 95 Ill. 2d at 220. Furthermore, audio taping in the special-education classrooms at issue is not the only means of protecting the teachers and students. As is evident from the facts in this particular case, the classrooms are videotaped, teacher aides are generally present in the classrooms, and teachers are subject to periodic evaluation (see 105 ILCS 5/24A--1 (West 2006)). Moreover, the protection of students and teachers is not the only public policy at issue in this case. There is also the public policy of protecting the privacy rights of Illinois citizens via the guidelines set forth in the Act.

The defendant next argues, in the alternative, that if the classroom instruction at issue here is covered by the Act, then the doctrine of implied consent must be considered. Specifically, the defendant contends that employees are subject to the defendant's policies and procedures and that the plaintiffs, therefore, must be found to impliedly consent to the proposed audio-taping policy or must seek employment elsewhere. The defendant correctly points out that the doctrine of implied consent applies to the Act. See People v. Ceja, 204 Ill. 2d 332, 347 (2003). Nonetheless, the defendant cannot compel employees to relinquish their statutory rights. See People ex rel. Fursman v. City of Chicago, 199 Ill. App. 356, 364 (1916) (holding that a school board has no power to pass an unreasonable rule in violation of a statute or the constitution); see also Melena v. Anheuser-Busch, Inc., 219 Ill. 2d 135, 142 (2006) (generally a statutory right can be relinquished only through a knowing and voluntary waiver). Moreover, implied consent is consent that must be inferred from one's conduct in the absence of a direct expression of consent. See Black's Law Dictionary 300 (7th ed. 1999); see also Ceja, 204 Ill. 2d at 349-50 (implied consent is consent inferred from surrounding circumstances indicating that a party has knowingly agreed to the surveillance). Application of the doctrine of implied consent is not appropriate in the present case because the plaintiffs' consent cannot be inferred; there is a direct expression regarding the plaintiffs' consent. Specifically, the plaintiffs filed a verified complaint affirmatively stating that they do not and will not consent to being audio taped while teaching.

The defendant's final contention on appeal is that the trial court abused its discretion in failing to: (1) permit it to file a counterclaim; (2) allow for an evidentiary hearing; and (3) allow it to conduct discovery on the issue of "consent." It is within the discretion of the trial court to grant or deny a party's motion. In re Marriage of Gowdy, 352 Ill. App. 3d 301, 307 (2004). In determining whether

the trial court abused its discretion, " 'the question is not whether the reviewing court agrees with the trial court, but whether the trial court acted arbitrarily without the employment of conscientious judgment or, in the view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted.' [Citation.]" Gowdy, 352 Ill. App. 3d at 307.

As to the whether the trial court abused its discretion in denying the defendant's request to file a counterclaim, we note that the defendant specifically requested to file a counterclaim for declaratory judgment. At the May 30, 2008, hearing, both parties agreed that they wanted a declaratory judgment as to whether the defendant's proposed audio-taping policy violated the Act. The trial court therefore allowed the plaintiffs leave to refile their motion for summary judgment to include a request for declaratory judgment. The defendant was then allowed to file a response and cross-motion for declaratory judgment. Thus, because the defendant was allowed to accomplish the same purpose via its cross-motion for declaratory judgment as it wanted to with its counterclaim, we cannot say that the trial court abused its discretion in denying the defendant's motion to file a counterclaim.

The trial court also did not abuse its discretion in failing to allow for an evidentiary hearing and discovery. The defendant filed a cross-motion for declaratory judgment "on the pleadings" and its prayer for relief requested a declaration, not a hearing or discovery. A motion for judgment on the pleadings indicates that the party is requesting that the trial court "rule in its favor based on the pleadings on file, without accepting evidence, as when the outcome of the case rests on the court's interpretation of the law." Black's Law Dictionary 1032 (7th ed. 1999). Moreover, we note that at the May 20, 2008, hearing, where the parties agreed to proceed on cross-motions for declaratory

judgment, the defendant indicated that it believed it was entitled to a hearing and to conduct discovery only because the plaintiffs were seeking injunctive relief. In response, the plaintiffs withdrew their request for injunctive relief. Finally, there was no issue of fact as to the element of consent. The plaintiffs' verified complaint indicated that the plaintiffs "have not and will not consent to be audio-taped." Thus, failure to permit discovery on the issue was not an abuse of discretion.

For the foregoing reasons, the judgment of the circuit court of Stephenson County is affirmed.

Affirmed.

BOWMAN and BURKE, JJ., concur.