FIRST DIVISION
FILED: December 27, 2010

No. 1-10-1956

| | | |
|---|---|---|
| DON NOWAK, | ) | APPEAL FROM THE |
| | ) | CIRCUIT COURT OF |
| Plaintiff-Appellant, | ) | COOK COUNTY. |
| | ) | |
| v. | ) | No. 09 M6 2436 |
| | ) | |
| THE CITY OF COUNTRY CLUB | ) | |
| HILLS, | ) | HONORABLE |
| | ) | LORETTA EADIE-DANIELS, |
| Defendant-Appellee. | ) | JUDGE PRESIDING. |

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Don Nowak, brought this action against the defendant, the City of Country Club Hills (City), seeking reimbursement, pursuant to the Public Safety Employee Benefits Act (PSEBA)(820 ILCS 320/1 *et seq*. (West 2006)), of his proportionate share of health insurance premium payments incurred after he sustained a disabling injury. The circuit court entered summary judgment in favor of the City, and the plaintiff has appealed.

The record establishes the following undisputed facts. In August 2005, the plaintiff was a full-time law enforcement officer for the City and also was a member of the local police union, which had entered into a collective bargaining agreement with the City. The terms of the collective bargaining agreement provided that the City would offer health insurance coverage for all police officers and that those officers who chose to participate in the plan were obligated to contribute 20% of the applicable insurance premium.

No. 1-10-1956

The plaintiff was a participant in the plan, and his 20% proportionate share of the insurance premium was regularly deducted from his paycheck.

The plaintiff was injured in the line of duty while attempting to make an arrest on August 21, 2005, and never returned to work as a police officer. For the 12-month period from the date of his injury to August 21, 2006, Nowak received 100% of his salary as required by section 1(b) of the Public Employee Disability Act (PEDA) (5 ILCS 345/1 (West 2004)). In addition, he also received his full salary and benefits until September 1, 2006, through a combination of accrued sick and vacation time, two weeks' light duty, and temporary total disability payments pursuant to the Workers' Compensation Act (820 ILCS 305/1 *et seq.*(West 2006)). During the period that the plaintiff was receiving his salary under the PEDA, the City continued to deduct his 20% share of his health insurance premium from his paycheck, in accordance with the collective bargaining agreement. The total amount of the plaintiff's health insurance premium contributions during that period was $3,083.88.

After the expiration of the one-year PEDA entitlement period in August 2006, the plaintiff continued to participate in the City's health insurance plan and paid his 20% premium contribution to the City on a monthly basis. The plaintiff's payments of his

2

share of the health insurance premiums after expiration of his PEDA salary benefits totaled $4,945.88.

In February 2008, the plaintiff applied for disability benefits, and on October 14, 2008, the City's police pension board awarded him a line-of-duty disability pension, effective September 1, 2006. After the pension board determined that the plaintiff was entitled to a disability pension, the City began paying 100% of his health insurance premium costs, as required by section 10(a) of the PSEBA (820 ILCS 320/10(a) (West 2006)). Thereafter, the plaintiff requested that the City reimburse him for that portion of the health insurance premium paid by him prior to the issuance of the pension board's decision, but the City refused.

The plaintiff then brought this action seeking reimbursement for his health insurance premium contributions from the date of his injury to and including the date he was awarded a disability pension, which included the contributions that were deducted from his paychecks while he was receiving the PEDA benefits and the contributions paid by him after the PEDA benefits expired.

The parties submitted a stipulation of the material facts and filed cross-motions for summary judgment. Following briefing and argument, the circuit court denied the plaintiff's motion and entered summary judgment in favor of the City, finding that the PSEBA "does not authorize retroactive payment of health insurance benefits prior to the Pension Board's determination." This appeal

No. 1-10-1956

followed.

The plaintiff argues that the circuit court erred in granting summary judgment for the City and in denying his cross-motion for summary judgment because the stipulated facts and applicable statutory provisions establish that he is entitled to judgment as a matter of law. On appeal, a grant of summary judgment is reviewed *de novo*. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 228, 864 N.E.2d 176 (2007). Further, the propriety of the circuit court's decision turns upon a question of statutory construction, which is also subject to *de novo* review. See *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 35, 923 N.E.2d 718 (2009); *Senese v. Village of Buffalo Grove*, 383 Ill. App. 3d 276, 278, 890 N.E.2d 628 (2008).

The fundamental issue presented by this appeal is the date on which the plaintiff's entitlement to the health insurance benefit provided in section 10(a) of the PSEBA was triggered. The plaintiff contends that his right to benefits under that provision accrued on August 21, 2005, the date of his disabling injury. The City, on the other hand, asserts that the plaintiff's right to the health insurance benefits did not accrue until the police pension board found him to be disabled on October 14, 2008. We observe that section 10(a) of the PSEBA does not specify when its benefits become effective, and we have found no Illinois cases that have

4

No. 1-10-1956

considered the matter. Consequently, we address this issue as one of first impression. In resolving this question, we are called upon to construe the language contained in two separate and distinct statutes that relate to special benefits afforded to law enforcement officers and other public safety employees who sustain disabling injuries in the performance of their duties.

When interpreting a statute, the primary goal is to ascertain and give effect to the intent of the legislature, and the most reliable indication of the legislature's intent is the plain language of the statute. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34-35, 805 N.E.2d 1165 (2004). Where the language of the statute is clear and unambiguous, it is to be given effect without resort to other aids of statutory construction. *Metzger,* 209 Ill. 2d at 35. Each word, clause and sentence of the statute should be given reasonable meaning and not rendered superfluous or meaningless. *In re Marriage of Kates*, 198 Ill. 2d 156, 163, 761 N.E.2d 153 (2001). A reviewing court will not depart from the plain language of a statute by reading into it exceptions, limitations or conditions that conflict with the express legislative intent. *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103, 117, 866 N.E.2d 227 (2007). Moreover, we are mindful that the legislature enacts laws with full knowledge of existing laws and of the construction those laws have been given by the courts.

5

No. 1-10-1956

*Illinois Dept. of Healthcare and Family Services ex rel. Wiszowaty*, 394 Ill. App. 3d 49, 58-59, 913 N.E.2d 680 (2009).

The two statutes at issue in this case are the PSEBA and the PEDA. The PSEBA is designed to guarantee, *inter alia*, the health benefits of public safety employees who have suffered a career-ending injury, and section 10(a) of that Act provides that the employer of a full-time law enforcement officer who suffers a "catastrophic injury" in the line of duty shall pay the "entire premium" of the employer's health insurance plan for the injured employee, his spouse, and his dependent children. 820 ILCS 320/10(a) (West 2006). The supreme court has interpreted the term "catastrophic injury" as used in this provision to be synonymous with an injury resulting in a line-of-duty disability pension under the Illinois Pension Code (40 ILCS 5/1-101 *et seq*. (West 2006)). *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 398-400, 789 N.E.2d 1211 (2003). Section 10(b) of the PSEBA specifically provides that "[n]othing in this Section shall be construed to limit health insurance coverage or pension benefits for which the officer, firefighter, spouse, or dependent children may otherwise be eligible." 820 ILCS 320/10(b) (West 2006).

The PEDA is designed to protect an injured employee's income for a period of one year, and section 1(b) of that statute states, in relevant part, as follows:

6

"Whenever [a full-time law enforcement officer] suffers any injury in the line of duty which causes him to be unable to perform his duties, he shall continue to be paid by the employing public entity on the same basis as he was paid before the injury, with no deduction from his sick leave credits, compensatory time for overtime accumulations or vacation, or service credits in a public employee pension fund during the time he is unable to perform his duties due to the result of the injury, but not longer than one year in relation to the same injury."

5 ILCS 345/1(b) (West 2006).

Section 1(d) of the PEDA provides that a disabled employee receiving salary benefits under that statute "shall not be entitled to any benefits for which he would qualify because of his disability under the provisions of the Illinois Pension Code." 5 ILCS 345/1(d) (West 2006). In addition, any salary compensation due to the injured employee from workers' compensation or other type of insurance carried by the employing public entity shall revert to that entity while the employee receives salary benefits under the PEDA. 5 ILCS 345/1(d) (West 2006).

Upon examination of the above statutory provisions, we find that the language contained in both the PSEBA and the PEDA is clear and unambiguous. Section 1(b) of the PEDA provides that an injured police officer is entitled to collect his full salary for a period

7

of one year, and section 10(a) of the PSEBA provides that such an officer is also entitled to the additional benefit of having his employer pay the entire premium for the health care plan for the police officer and his family. Nothing in the plain language of either statute precludes an injured police officer from receiving benefits under both of these statutes at the same time. Thus, contrary to the ruling of the circuit court, there is no explicit prohibition against the "retroactive payment" of health insurance benefits under the PSEBA for the period of time from the date of the disabling accident to the pension board's decision that the officer is eligible for a disability pension. In light of this circumstance, we construe section 10(a) of the PSEBA and section 1(b) of the PEDA together and find that benefits may be granted under both provisions simultaneously without offending the purpose of either statute. Though this interpretation allows a very generous benefit to public safety employees who sustain disabling injuries in the line of duty, we see nothing in the language of either statute to indicate that the legislature did not intend to confer such a benefit.

In seeking to avoid this result, the City first argues that section 10(a) of the PSEBA confers a benefit that is unknown at common law and, as such, constitutes a statute in derogation of common law that must be strictly construed in favor of the employing entity that is subjected to its operation. See *Murphy v.*

8

No. 1-10-1956

*Mancari's Chrysler Plymouth, Inc.*, 381 Ill. App. 3d 768, 774, 887 N.E.2d 569 (2008); *Delaney v. Happel*, 185 Ill. App. 3d 951, 954, 542 N.E.2d 46 (1989). This argument necessarily fails because the strict-construction rule relied upon by the City commands only that the court "will not presume that the legislature intended an innovation of the common law further than that which the statutory language specifies or clearly implies." *Williams v. Manchester*, 228 Ill. 2d 404, 419, 888 N.E.2d 1 (2008). Therefore, even a strict construction of a statute in derogation of the common law must be anchored in the statutory language. As set forth above, we find nothing in the plain language of section 10(a) of the PSEBA that imposes any time limitation on a disabled public safety employee's right to collect the benefit provided therein.

The City also contends that the plaintiff's entitlement to the health benefits under section 10(a) of the PSEBA was not triggered until October 14, 2008, because that is the date on which the police pension board determined that he had suffered a "catastrophic injury," which is a condition precedent to the receipt of benefits under the PSEBA. We note, however, that the underlying basis of this argument is fundamentally flawed where the pension board found that the plaintiff was eligible to collect a disability pension as of September 1, 2006, which was the termination date of his salary benefits under the PEDA, accrued

9

sick and vacation time, two weeks' light duty, and workers' compensation payments. Thus, the pension board clearly determined that the plaintiff was disabled and entitled to a pension as of the date of the injury, but his right to collect such payments was deferred so as not to result in duplicative salary benefits from multiple sources. We find that the pension board's decision was consistent with the language in section 1(d) of the PEDA, which specifically precludes an injured employee who is receiving salary benefits under that statute from also receiving salary compensation under the pension code or as a result of workers' compensation or other insurance carried by the employing public entity. See 5 ILCS 345/1(d) (West 2006)). That determination does not, however, affect the claimant's right to recover under section 10(a) of the PSEBA because that statutory provision does not relate to salary compensation but confers an entirely different benefit: the payment of the employee's share of his health insurance premium. Consequently, we conclude that an employee who has suffered a career-ending injury is entitled to payment of his proportionate share of his health insurance premium by the employing entity as of the date of the injury, without regard to the fact that the employee has not yet been found to be eligible for a disability pension.

This reasoning leads us directly to the City's next argument that its obligation to provide the health insurance benefit under

section 10(a) of the PSEBA does not arise until after the expiration of the salary benefit provided by section 1(b) of the PEDA. In support of this claim, the City relies on section 1(d) of the PEDA and argues that the salary benefit conferred by the PEDA is intended to place the injured employee in the same, but not a better, position as that he would have occupied if he had not been injured. We find this argument to be unpersuasive.

First, the City's argument fails to take into consideration the fact that the PSEBA grants additional benefits that are not dependent upon or limited by other benefits afforded under the PEDA or any other statute. As we have previously observed, there is no language in the PSEBA that prevents application of its terms to circumstances in which the injured employee is receiving salary benefits under the PEDA.

Second, the City's reliance on section 1(d) of the PEDA is entirely misplaced. As set forth above, that provision specifically precludes an injured employee from collecting salary compensation in the form of a disability pension or as a result of workers' compensation or other insurance carried by the employing public entity while also receiving the salary benefit provided in section 1(b) of the PEDA. See 5 ILCS 345/1(d) (West 2006)). Yet, section 1(d) makes no mention of section 10(a) of the PSEBA. Under the interpretive principle of *expressio unius est exclusio*

11

*alterius*, "the enumeration of exceptions in a statute is construed as an exclusion of all other exceptions." See *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 286, 786 N.E.2d 139 (2003); *Plock v. Board of Education of Freeport School District No. 145*, 396 Ill. App. 3d 960, 967, 920 N.E.2d 1087 (2009). Thus, the fact that section 1(d) of the PEDA does not reference the PSEBA indicates that the legislature did not intend for the benefits under these two statutes to be mutually exclusive.

Finally, the City contends that the circuit court's decision should be affirmed because the interpretation we have adopted above creates "obvious practical problems" and "obvious budget difficulties" for a municipal employer who may not know for several budget years whether it will be obligated to reimburse disabled employees for their health insurance premium contributions. Acceptance of the City's argument would require us to depart from the plain language of section 10 of the PSEBA by reading into it an exception in the form of a time limitation that does not appear in the statute. Such an interpretation would dilute the effect of the PSEBA by restricting its application in a manner that was not expressed by the legislature and would run counter to the purpose of the Act. We decline the City's request to do so. Accordingly, even if the City's contention with regard to its budgetary concern is true, it cannot serve as a basis for our insertion of a

12

limitation that the legislature did not express.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded to the circuit court with directions to enter summary judgment in favor of the plaintiff.

Reversed and remanded with directions.

HALL, P.J., and LAMPKIN, J., concur.